Judge James
differing from his brethren, delivered the following opinion:
In this case there are two points upon which there is a difference of opinion :
First, — Whether the execution of Hall mentioned in the decree below would attach upon the lands in the possession of John Rusbton, under the conditional bond ?
Second, — Whether there was such fraud as would vitiate the second contract made between Hutto and Sherwood Rusbton.
O11 the first question I stand alone. On the second, I am supported by one of my brethren.
As to the first point, it appears that the bill was filed for an injunction and frsem cry. The disooverymade, was that there existed a conditional bond to make titles to lire land between Hutto, the vendor, an..' J-hn -lusiii:i n the tendee. This was the first contractjmiuic, which was *382 dated in 3 801. The consideration money mentioned therein was eighty dollars; upon payment of which Hut-to waR to make tilles : ami upon failure, the bond was to be void. John Rushton was put in possession of the lands, and held them for fourteen or fifteen .months, and he paid sixty-five dollars of the consideration money. In 2806, he ami Hutto rescinded the contract as between themselves; but there was no proof of the repayment of the sixty-five dollars to John Rushton. They cancelled the bond, and Hutto made a second title to Sherwood Rushton. By other evidence adduced on the trial, it appeared that while John Rushton was in possession in 1802, Hall obtained judgment against him and issued his execution. It was levied upon the land, and Hall offered Hutto, by his agent, thirty dollars to quit his .@1 aim. which he refused, saying, he had made titles tor John Rushton.
From the scope of the evidence, it appears that the sheriff got possession of the grant and title deeds, either from Hutto or John Rushton, and that he afterwards sold the land at sheriff’s sale, and Hail became the purchaser. Hall sold to Kelly, and Kelly to Barton, the complainant. Now, both in an equitable and legal point of view, the execution will attach upon the lands, as those of J. Rushton, under the conditional bond. Both these positions are'capable of demonstration. I grant that the parties to this conditional contract had a right to rescind it while it remained executory; but by the possession and payment by John Rushton of a material sum, and not of mere earnest money, the contract became executed by part performance, and upon an offer of the balance, this court would decree specific performance. Hagood vs. Neal g Pre. Chan. 561. 1 Pow. 30.9.
At this time the right of Hall commenced under his execution; he stepped at > nee into the shoes of John Rushton, and offered toj>ay thebalance. This was doing all that equity required; and the liberty of the contracting -parties to rescind the contract, was now at an end, The-y both had notice of Hall’s right; and if they annulled the contract without his consent,' if was an in- *383 'fKngement of that right. Now the powers of a Court of Equity, called emphatically a court of conscience, are not confined to things tangible alone by the senses, it will lay hold on the cofsoiences of men, and mould them so as to 'make them conform to the principles of justice. í4And it will prevent a wrong, even where the positive law is silent.” And again, « there is no magic in words, or technical expressions; the party contracting has not an election, to perform his contract- or not; in conscience he is clearly bound todo the specific thing which he has covenanted to do. 1 Fonb. 35, 5G — But. which obligation a court of law cannot in all ease?, enforce.” Hall had a right or demand. Hutto and Rushton were bound by a conseiencious obligation not to defeat that demand. They have attempted todo so. Then will equity give him relief ? It certainly ought. Setting aside technical forms, equity ought to shape either the execution or its “ injunctions,” in such a way as to cause it to attach upon the consciences of the contracting parties, in order to prevent the wrong intended, and to establish the right, so that metaphorically speaking, and in .such language as this court often adopts, the execution will attach in equity upon the consciences of the parties. But further, at law it will attach upon the condition of the bond, such as it was after part performance. By the common law in England, a man could only have satisfaction by execution out of goods and «battles and present profits of lands upon feudal principles : afterwards by a writ of clegit provided by statute goods ami chatties were not sold, but appraised and delivered to the plaintiff. If these were not sufficient to satisfy the debt, then the moiety of the freehold lands of the debtor, whether held in his own name, or in trust, wore delivered to the plaintiff to hold, till out of the rents and profits the debts be levied.
Thus wo find that executions in England were not issued against the whole estate in lands, tenements or hereditaments. But by the statute of 5 George XL for the moro easy recovery of the debts In the colonies, and Whisk is made of force in this state, feudal principles are *384 laid aside, and the houses, land, and negroes, and other hereditaments and real estates of debtors, are made liable to execution. By the county court act, tenements are also made vendible under execution; Hie words he-feditaments is inserted in our common fieri facias, and not in the English precedents. 2 Black. 17.
Judge Blackstone says, that hereditaments, to use the largest expression, are of two kinds, corporeal and incorporeal. Corporeal consist of such as affect lh« senses, such as may be seen ami handled by the body. Incorporeal arc not of sensation; can neither be seea nor handled, are creatures of the mind, and can only exist in contemplation. This definition alone would «aery us to an extent, which those confining themselves to common law principles, and not recollecting that we are governed by statute law on this subject, are but little aware of. But farther, lord Coke says, that a hereditament is anything which may be inherited ; and so a condition, the benefit of which may descend to a man from his an-, cestors, is also a hereditament, which last decision completely proves my position, that the execution at law will attach upon the condition of this bond, to make titles ; for the benefit of such condition as is contained therein, will descend to a man from his ancestor. The extent of this doctrine cannot possibly be an objection to it, since in justice every part of a man’s property ought to be liable for his debts. It is easy too to distinguish between the liability of a vendor or a vendee, if part performance be made to constitute the line of distinction. The good policy of extending the lien of executions is also well worthy of serious consideration. In tlie state of New-York, this policy has been adopted to a great extent, and that too by the bench of Common Pleas judges, where it has been solemnly decreed, “ that a resulting trust capa--ble of proof, is vendible under execution. And by the converse of the proposition stated in another case, that an equity of redemption is also liable to execution at law.”1
On the impolicy of confining the lien of the execution in this case, I will barely observe, that in this lately settled country, slight evidences establish a good title to *385 lands. And it is notorious that the most common right made for lauds by vendors, is a conditional bond to make titira: Then to decree that such lauds in the bauds of purchasers» shall nut be liable under any circumstances, (lav this goes that length,) will be completely opening the «loor to frauds. All that is necessary for a purchaser to do, will be to pay up a material part of his purchase money, then to leave his titles incomplete, and he may bid defiance to his creditors, if part of the consideration money be paid substantially, if it exceed the hounds of earnest money, and something be done as owner of tlio estate, the \ endec will be equally safe, as against the vendor, so that on all sides his conditional bond will be a wail of defence; against the vendor, because he may pry up the balance and rest upon his imperfect title; and. against the creditor, because by the present decision of the equity beneh, such title, is not vendible, under execution. For the above reasons, i am of opinion that the eíccuífon in this case will at.ach upon the conditional bond, under the circumstance of part performance.
We come next to the second question of fraud ; — I think it more plain than the first, because it does not rest upon abstruse principles.
1 mean to confine myself to statutory, which is peculiarly within the province of equity : and to shew, firsr,- — . that Joseph and John Rushton were the original contrivers of the fraud, and therefore ought not tobe benehthd by it. Second, — That Shenvood Jiushton was. connu-sant of the claim of Hall, and of the fraud, and therefore his title is vitiated — and the claim of all the defendants being derived from it is void.
. John llimhton was called upon for a discovery, and to purge his conscience of the fraud. A simple discovery or a direct denial of the charge was ail that was necessary for his defence, and all that was required by the bill. Ho makes the discovery and denies the fraud ; bin; he afterwards goes on to state that the contract was rescinded and the bond cancelled, and his intentions were upright in ail matters regarding the rerision and cancel-ling. 0 u£ it was his business to state facts, and for! he court *386 to draw the inferences. The fact of cancelling orig'naied with himself j it was neither charged in nor called for by the bill: and mat,tor, pleaded in evidence are not evidence» <• for where a defendant confesses and avoids, as to the evidence, he is as a plaintiff! Then as to the cancelling, the testimony of the witnesses is to be received against tin answer, independent oi the plea in bar, and they establish the motive with which the cancelling was done. They testify ;hat John Rushton said, after tho judgment was obtained, that he would be fast enough for flail yet; that he would give bark his title and defeat the execution. His m >tjve therefore- in eanceUiug, was to defeat the rights of Hail, a ihird person who was implicated, and not con, seating to the transaction.
a spoliation íl-imiton, which wujhi oe enough for This evidence is s nleient to establish on the part of J, mv present purpose 3 but the fraudulent motive can ais® be brought home to U.iU'o_Roberts on Frauds, 85-ti.
In 1802, lie bad waived all claim to the land ; and in 180(5 he -ad. the second title to Sherwood IL;sM;m in, the face of his w aiver; and three witnesses have testified that he said he did so t.o save the lands for the poor young fellow, naming John Rushton; for his expected loss was tho subject of conversation at that timo. But in saving Itushton, his motive also was to defeat the claim of flail. Now this brings back the intention of Hutto to the same-point with that of John Rushton, namely, to a deceit prac-tised upon one who was not a party to the contract: — . But particular persons in their contracts shall not only contract bona fide among themselves, but shall not contract mala fide in respect to other persons, who stand in such a relation as to be either affected by the contract or the consequences of it. — Lord Hardwicke- in Chesterfield vs. Janssen.
Hutto might have been led into this weakness in favor of a neighbor, by mistaken motives of humanity, or by his imposition ; bat still, this will not alter the case; it may acquit him of gr-»ss immorality, hut still the legal fraud will remain. For equity will construe even silence,' *387 sonnecfed with a weakness of tbe most amiable kind, into a 1; gal fraud. — gViner, 150, Henderson us. Cherry.
Some doubt was raised here as to the ev ideare — not as to Hutto’s admission, for that point was ceded ; but as to there being loose and vague- declarations.
Now I answer, that it was the evidence of three witnesses-uuirapeaclieiL Admit the doubt here, — then it must apply generally ;■ — -and where will it lead ? YV ill it not be to the entire exclusion of parol testimony ? Certainly it will: arid are those who doubt prepared to meet the objection to this extent. The doubt tlieu must be as to the credibility of the witnesses. But Í have already observed, that their credit stands unimpeached : Besides, I have always thought that tbe court into which witnesses are introduced, and which inspects their manner and attends to their matter, can form as good an opinion of their credibility and accuracy as need be required. — * No other court can have the same opportunity.
What I have said only goes to establish the fraud oa the part .of John Rushton and Hutto ,* but Joseph Rushton is also implicated.
He states in bis answer, that he believes there was no fraud in Sherwood Rushton’s obtaining the. title to the land; but says nothing of the part which he took in the business. Now Kelly has proved that he tampered with him to get possession of the grant and title-deeds. His son, Sherwood, then lived under his roof, subject to his control; and the presumption of collusion becomes in these points of view strong against him; but to place parties under a disability to commit fraud, certain transactions of an equivocal or ambiguous nature, are construed to be fraudulent in judgment of law — Roberts on the Statute of Elizabeth, 189, At present by the death of Sherwood Rushton, both Joseph the father and John Rushton his son have become interested in thasurt. Now it has been a long established rule, that' what is good at the beginning cannot become fraudulent by matter, ex post facto. 9 Roberts on tbe Statutes 189, 517, 521, 2. To which rule however, there are exceptions in favor of creditors and purchasers ; then in favor' *388 0f these the converse of the rule- must hold still more ' strongly.
That a transaction fraudulent at the beginning cannot become good by matter ex post facto, more especially when the original contrivers and actors in the fraud are to be be-nefitted. At lav fraud must be proved — in equity it may be presumed, and inferred from suspicious circumstances and equivocal‘dealings,-which is the constructive fraud of the- statutes ;,bnt if it can neither be presumed nor inferred from a case under the circumstances of this kind? then Í am clearly of opinion there is an end of the equitable distinction in this country.
The second point under the last general question,next offers itself for consideration — -that is, whether Sherwood ilnshtou had sufficient notice of the right of Hall, or of the fraud to vitiate his title.
This would again divide itself into two different branches of considerable extent; but I shall consider it bri ñy in ene. For with a knowledge of the rights of Hall, either direct or constructive, his title would be bad. If the validity of the judgment and execution to attach has been established, and l am clear it has, the judgment will operate as a sufficient notice. If it lias not, still there are other grounds of notice. Sherwood Hush-ton lived near to his brother John, and as is before observed, under the roof and subject to the control of his father: both of these defendants were perhaps enemies : the facts relative to Hall’s claim were proved to be noto-yious in the neighborhood : and Sherwood Itushton dealt with Hutto who í¡ad notice.
Under all these circumstances the presumption against him is violent. It is sufficient under the statutes. But further, the grant and other titles, as we have- seen, were in the possession of the opposite party, and when at the second sale they were not produced, this certainly was sufficient to put the. vendee upon enquiry, and he could immediately have resorted to the vendor, who was connusant, for information. Even a defective title, much less a total want of title, was a sufficient construe- - tive notice: it‘was crassa neeligentia, that he sough* *389 wot after it, and yet would traffic for what in equity belonged to another : so that the title of Sherwood Rush-ton is wot good against Kail, a creditor and bona fide purchaser. And further tracing it back to the fraudulent source whence it is derived, it becomes vitiated and void in the hands of ail the defendants.
For the above reasons I am of opinion that the decree of the circuit court ought to be affirmed.
W. D. Jambs.-